<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHARLENE LOUBRIEL,<br><br>      Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>      Defendant. | Civil Action No. 15-1855 (JLL)<br><br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court upon the appeal of Sharlene Loubriel ("Plaintiff") from the final decision of the Commissioner upholding the final determination by Administrative Law Judge ("ALJ") Dina Loewy denying Plaintiff's application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). The Court resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.l(f). The Court has reviewed the parties' submissions, and for the following reasons, the final decision of the Commissioner is affirmed.

**I.     BACKGROUND[1]**

Plaintiff was born on May 28, 1970. (R. at 160.) She completed school up to the tenth grade and did not get her GED. (*See id.* at 415.) Plaintiff previously worked at the Washington Heights Pediatric Group ("Pediatrics Group") as a medical secretary. (*See id.* at 416-417.) Plaintiff stopped working at the Pediatrics Group in 2003 or 2004 because she had surgery for gallbladder stones. (*See id.* at 420.) Plaintiff asserts that this surgery precluded her from working

---

[1] "R." refers to the Administrative Record, which uses continuous pagination and can be found at ECF No. 6.

afterwards because "that's when [she] started getting sick with everything else." (*Id.* at 421.) She further asserts that, after this period, her symptoms worsened, and she claimed that at the time of the hearing she was suffering from neuropathy, sleep apnea, and hepatitis C. (*Id.*)

Plaintiff filed an application for SSI in 2007, alleging disability as of July 31, 2005. (*See id.* at 160-63.) Her application was initially denied, and denied again on reconsideration. (*See id.* at 91-99.) A hearing was held on June 29, 2009 before ALJ Dennis O'Leary. (*See id.* at 58-78.) On July 10, 2009, ALJ O'Leary issued a decision finding that Plaintiff was not disabled. (*See id.* at 79-87.) On May 21, 2010, the Appeals Council remanded the case for further proceedings because Plaintiff had not been informed of her right to representation during the June 29, 2009 hearing. (*See id.* at 88-90.)

Another hearing was held before ALJ O'Leary; Plaintiff was represented at the hearing. (*See id.* at 26.) On October 10, 2010, ALJ O'Leary again found Plaintiff to not be disabled. (*See id.* at 12-25.) Plaintiff appealed ALJ O'Leary's October 2010 decision. (*See id.* at 6-11.) The Appeals Council denied review, at which point Plaintiff appealed to this Court. (*See id.* at 456-58, 463-67.) On May 17, 2013, pursuant to a consent order, this Court ordered the reversal of ALJ O'Leary's decision and remanded this matter back to the Commissioner for further proceedings. (*See id.* at 456-57.)

As a result of the remand, another hearing on the matter was held on December 10, 2013 before a new ALJ, ALJ Loewy. (*See id.* at 410-42.) Plaintiff testified at the December 2013 hearing and was represented by counsel. (*See id.*) The hearing was continued in order for Plaintiff to obtain further medical records from her primary care physician as well as undergo consultative examinations by an ophthalmologist and an internist. (*See id.* at 440.) After submission of these items, another hearing was held on July 17, 2014 where testimony from Vocational Expert ("VE")

Esperanza Distefano was taken. (*See id.* at 377-442.) Plaintiff was present at the hearing and was represented by counsel. (*See id.*)   At the end of the July 2014 hearing, ALJ Loewy closed the record. (*See id.* at 408.)   ALJ Loewy subsequently denied Plaintiff an opportunity to submit additional rebuttal testimony, but did reopen the Record for an additional fifteen days. (*See id.* at 376.) Plaintiff submitted no additional evidence, and, on December 1, 2014, ALJ Loewy issued a decision again finding Plaintiff not to be disabled. (*See id.* at 352-74.) Plaintiff's appeal of ALJ Loewy's decision is presently before this Court.

## II.   STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "[i]t is less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Additionally, under the Act, disability must be established by objective medical evidence. To this end, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." 42 U.S.C. § 423(d)(5)(A). Instead, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

*Id.*; *see* 42 U.S.C. § 1382c(a)(3)(A).   Factors to consider in determining how to weigh evidence from medical sources include (1) the examining relationship; (2) the treatment relationship,

including the length, frequency, nature, and extent of the treatment; (3) the supportability of the opinion; (4) its consistency with the record as a whole; and (5) the specialization of the individual giving the opinion. 20 C.F.R. § 404.1527(c).

The "substantial evidence standard is a deferential standard of review." *Jones*, 364 F.3d at 503. The ALJ is required to "set forth the reasons for his decision" and not merely make conclusory unexplained findings. *Burnett v. Comm'r of Soc. Sec,* 220 F.3d 112, 119 (3d Cir. 2000). But, if the ALJ's decision is adequately explained and supported, the Court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). It does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. *Monsour Med. Ctr. V. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986)). The Third Circuit has made clear however that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505.

## III.    THE FIVE STEP PROCESS

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Pursuant to the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382(a)(1)(A)-(B) and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A person is disabled only if his physical or mental impairment(s) are "of such severity that he is not only unable to do

his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Third Circuit has summarized "the five step sequential evaluation for determining whether a claimant is under a disability, as set forth in 20 C.F.R. § 404.1520" as follows:

> In <u>step one</u>, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).
>
> In <u>step two</u>, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.
>
> In <u>step three</u>, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d).   If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.
>
> <u>Step four</u> requires the ALJ to consider whether the claimant retains the residual functional capacity [("RFC")] to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994).
>
> If the claimant is unable to resume her former occupation, the evaluation moves to the <u>final step</u>. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled.

*Jones*, 364 F.3d at 118-19 (formatting and emphasis added). "The claimant bears the burden of proof for steps one, two, and four of this test. The Commissioner bears the burden of proof for the last step." *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987)).   Neither party bears the burden of proof at step three. *Id.* at 263 n.2.

## IV.    DISCUSSION

### A.  Summary of ALJ Loewy's Decision

On December 1, 2014, ALJ Loewy issued a decision finding that Plaintiff was not disabled under section 1613(a)(3)(A) of the Social Security Act.  (R. at 368.)  In reaching this decision, at step one, ALJ Loewy found that Plaintiff had not engaged in substantial gainful activity since January 22, 2007.  (*Id.* at 355.)

At step two, ALJ Loewy found that Plaintiff suffered from the following severe impairments: "asthma, back disorder, cataracts and maculopathy, obesity, carpal tunnel syndrome and diabetes." (*Id.*)  ALJ Loewy, however, did not find the following alleged impairments to be severe: tachycardia, fibromyalgia/arthritis, sleep apnea/restless leg syndrome, hepatitis C, right shoulder bursitis, headaches, fibroids/fatty liver, or depression. (*See id.* 355-358.)   As discussed in more detail below, ALJ Loewy engaged in a detailed analysis in finding these impairments not to be severe.  (*See* R. at 355-359.)

At step three, ALJ Loewy did not find that Plaintiff's impairments meet or medically equal in severity any of the clinical criteria for the Listed Impairments.  (*Id.* at 359-60.)   ALJ Loewy then determined that Plaintiff had the RFC to perform "sedentary work."  (*Id.* at 360.)  ALJ Loewy found that this RFC was limited as follows:

> [Plaintiff] can only occasionally push and pull on the right side.  The claimant is limited to only occasional foot control, occasional climbing of ramps and stairs, and never climbing ladders, ropes or scaffolds.  She can occasionally balance or stoop but never kneel, crouch or crawl.  The claimant is further limited to frequent right gross manipulation and frequent right fine manipulation.  She should avoid concentrated exposure to vibration, and avoid concentrated exposure to irritants. She should avoid all exposure to unprotected heights, avoid even moderate exposure to hazardous machinery, she cannot drive a motor vehicle and she is limited to occupations not requiring her to read small print.

(*Id.* at 361.)   In reaching this determination, ALJ Loewy engaged in a detailed discussion of Plaintiff's impairments compared to her medical records and medical opinions. (*See id.* at 361-67.)

At step four, ALJ Loewy determined that Plaintiff was unable to perform her past work as a medical secretary. (*Id.* at 367)  At step five, based on testimony from a vocational expert, ALJ Loewy however determined that there were a significant number of jobs in the national economy wherein Plaintiff could work despite her limitations. (*Id.* at 367-68.)   For these reasons, ALJ Loewy concluded that Plaintiff was not disabled as defined in the Act. (*Id.*)

With respect to Plaintiff's request for another hearing in which to submit rebuttal vocational expert testimony, ALJ Loewy explained that such testimony was not necessary because: 1) Plaintiff's counsel had not objected to the VE serving as an expert; 2) the ALJ had not based her opinion on the portions of the VE testimony with which Plaintiff objected; 3) the ALJ had reopened the Record for an additional period of time after the request, and Plaintiff did not submit any additional substantive correspondence or evidence related to the VE issue; and 4) the VE expert relied, as she was permitted to do, on vocational sources as well as "her significant professional experience and knowledge of how jobs are performed." (*Id.* at 353, 361 n.1.)

**B. Analysis**

Prior to addressing the heart of Plaintiff's arguments, the Court first notes that Plaintiff's brief does not comply with Local Rule 9.1(e).  Plaintiff's brief does not contain a meaningful "statement of the issues presented for review," it does not contain a statement of facts (separate from a statement of the case describing the course of the proceeding), and it does not contain an argument section that is "divided into sections separately treating each issue."  L. Civ. R. 9.1(e)(5)(A)-(D).   This requires the Court to sift through Plaintiff's stream of conscious,

hyperbolic, and unnecessarily caustic arguments[2] to determine the bases for the appeal. Although Plaintiff's only argument heading is that "[t]he Commissioner did not bear its burden of proof at step five" (*see id.* at 27), it appears that Plaintiff actually is challenging the ALJ's findings at Step two (*see id.* at 19-20), her RFC finding (*see id.* at 22-27), as well as her analysis and process at step five (*see id.* at 27-38). More troubling, Plaintiff fails to comply with the Rules in that the vast majority of facts are stated without "reference to the administrative record" as required. L. Civ. R. 9.1(e)(5)(C).

The Record in this case is 787 pages long. The brief contains only twenty-two (22) citations to the Record related to the present decision on appeal. Of these twenty-two citations, *only eight citations are to medical records*—five to one consultant report, and the other three to *three* pages of medical records. Most of Plaintiff's arguments attacking the ALJ's findings are made without any citation to the Record evidence.[3] In short, Plaintiff's counsel appears to believe that an appellant's burden on appeal is simply to rhetorically complain about inadequacies without actually having to make specific organized arguments, supported by legal analysis (beyond boilerplate recitation of standards and rules) and record citations, punting that job instead to the Court. Although the Court must consider the entire record, it is not this Court's job "to undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might

---

[2] *See, e.g.*, Pl.'s Br. at 35-36 ("Plaintiff wished to set the record straight and contradict this frankly ignorant, surreal or blatantly invented nonsense by calling another of the Commissioner's expert to rebut it."). Plaintiff's counsel has previously been reprimanded by the Third Circuit for such unnecessary language and attacks. *See, e.g.*, *Ortega v. Comm'r of Soc. Sec.*, 232 F. App'x 194, 198 n.1 (3d Cir. 2007) ("We express our displeasure with the overheated rhetoric and ad hominem attacks on the ALJ that Abraham S. Alter, Esq., has seen fit to inject into Appellant's brief.").

[3] *See, e.g.*, *id.* at 20 (Sarcastically referring to an ALJ finding and stating that "[d]iagnoses of arthritis by **numerous medical sources** are not severe because plaintiff 'is in her early 40s'" (emphasis added) without a single citation to the Record to support this statement and without citation to the ALJ's paragraph-long explanation for her finding, *see* R. at 356.).

contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006); *see also Garrett v. Comm'r of Soc. Sec*, 274 F. App'x 159, 162-63 (3d Cir. 2008) ("[T]here is substantial evidence in the record to support the ALJ's conclusion that Garrett's impairments do not meet or equal the criteria in Listing 1.04. First and foremost, Garrett provides us with no citations to any record evidence demonstrating that her impairments are of Listing-level severity. . . . [T]here is no evidence in the record of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis, as required under Listing 1.04. . . . Garrett points us to no such evidence in the record.") (internal citations omitted); *Alamo v. Comm'r of Soc. Sec.*, No. 13-3847, 2014 WL 4354033, at *5 (D.N.J. Sept. 3, 2014) ("Although Plaintiff assigns error to ALJ Dunn's conclusion, she has offered no citation to the record nor presented any further evidence before this Court that negates Dr. Savidas' report."). However, because the Court does not wish to punish the claimant in this case simply because her attorney has failed to comply with the rules or engage in meaningful analysis, the Court has nevertheless addressed Plaintiff's arguments to the extent that it can do so based on the ALJ's decision and citations provided by the Government.[4]

The Court also notes that its analysis is directed only to ALJ Loewy's December 1, 2014 decision which is presently on appeal. This case has a long procedural history, spanning many years and three ALJ decisions by two different ALJs. (R. at 12-25, 79-87, 349-74.) In addition to taking issue with ALJ Loewy's decision, Plaintiff makes various arguments regarding errors that occurred prior to the case being assigned to her. (*See* Pl.'s Br. at 11-17.) The Court has not

---

[4] Plaintiff's counsel, Mr. Alter, is specifically placed on notice that such briefs will not be accepted in the future, and any re-briefing time for a brief that originally failed to comply with the Rules will not be credited when considering reasonable fees for successful appeals.

considered those arguments as the prior errors are the reason why ALJ Loewy was directed to accept additional evidence and undertake a new analysis.   Additionally, the Court has not compared the prior ALJ decisions to ALJ Loewy's present decision.   On the one hand, Plaintiff argues that the prior ALJ findings were "completely random."   (*Id.* at 13.)   On the other hand, Plaintiff argues that certain aspects of these purportedly unsupported prior findings that are not contained in ALJ Loewy's decision support a finding of error now, or, at a minimum require an explanation by ALJ Loewy.   (*See, e.g., id.* at 19 ("Plaintiff's migraine headaches, found to be severe twice before, are no longer severe . . . .").)   The Court disagrees.   ALJ Loewy was required to review the Record, proceed through the five-step sequential evaluation, and make a determination that was supported by substantial evidence.   She was not additionally required to evaluate and compare the prior ALJ decisions to her findings.

      1.   <u>Severity of Impairments at Step Two</u>

As noted above, at step two, ALJ Loewy found that Plaintiff suffered from several severe impairments.   She also found other of Plaintiff's impairments either not to be severe or not to be supported by the medical evidence.   For each of the ailments which ALJ Loewy found to be non-severe, she provided a detailed explanation for her finding with citation to the medical records and testimony.   (*See* R. at 355-59.)   For example, while ALJ Loewy noted Plaintiff's past tachycardia diagnosis, she also noted that "her recent consultative examination on March 23, 2014 . . . showed the claimant had a normal chest exam."   (*See id.* at 355-56.)   Additionally, even when ALJ Loewy found an impairment to be non-severe, she noted that any resulting limitations—to the extent they existed at all—were nonetheless accounted for in her RFC assessment.   For example, with respect to Plaintiff's hernia, ALJ Loewy found:

> While the claimant's small ventral hernia is found to be non-severe, the residual functional [capacity] would account for this condition, as the claimant was limited to sedentary exertional level work with additional postural limitations.

(*Id.* at 356.)

Plaintiff disputes ALJ Loewy's non-severe findings, arguing that the "step two roster of severe impairments is incomplete." (Pl.'s Br. at 27.)  Without any real analysis (or Record citation), Plaintiff argues that the following impairments should have been found to be severe: hepatitis C, migraine headaches, right shoulder bursitis, cervical disc disease, peripheral neuropathy, lumbar disc and myelopathy, sleep apnea, hypertension, tachycardia, fibromyalgia, arthritis. (*See id.* at 19-20.)

With regard to cervical disc disease, Plaintiff—without citation to medical records—claims that she "has a herniated disk in her neck at C4-5 proven on an August 20, 2008 MRI." (*Id.* at 26.) She further states that "[t]he ALJ records that reality . . . but neither finds plaintiff to suffer a severe neck impairment or affords any RFC restriction on account thereof." (*Id.*)  Plaintiff fails to address subsequent medical tests or the ALJ's discussions of such tests.  In fact, ALJ Loewy noted that "[a] follow-up MRI of August 20, 2009, showed improved findings. The claimant['s] small central disc herniation at C4-5 . . . was diminished in size when compared to the prior study.  There was no associated cord flattening by the disc herniation.  There was also [a] minimal annular bulge at C5-6, that was stable and no new disc herniation or cord compression was observed." (R. at 364 (citing the treatment records of Dr. Nagesh B. Krish, MD, at 678).)

With respect to peripheral neuropathy, Plaintiff—with a few of the only citations to the medical records—states that "[a]n EMG performed on January 20, 2012 revealed 'sensorimotor axonal and demyelinating peripheral neuropathy predominately affecting both lower extremities and bilateral L5-S1 radiculopathies.'" (Pl.'s Br. at 26 (citing R. at 663-64).)  Plaintiff further states that "[c]linical correlation that same day indicated muscle weakness, atrophy of the distal muscle groups, reflex loss at both ankles and impaired sensation to pinprick and vibration in both legs."

*Id.* Some of this information is related in the decision but plaintiff is never found to suffer peripheral neuropathy as a severe impairment." (*Id.* at 26-27.) Plaintiff argues that the ALJ's decision "doesn't acknowledge the peripheral neuropathy and doesn't afford a single RFC restriction because of it." (*Id.* at 27.)

Again, Plaintiff ignores ALJ's Loewy's analysis and the subsequent medical records on which she relied. ALJ Loewy acknowledged the January 20, 2012 test but also noted that "[a] follow-up MRI of the lumbar spine on February 16, 2012, showed normal findings." (R. at 364 (citing Dr. Krish's treatment records, *see id.* at 659).) She also noted that "[o]n August 30, 2012, the claimant was seen for treatment for her neuropathy and muscle pain complaints," and that "[t]he only treatment so far was medication with adequate relief." (*Id.*) ALJ Loewy also quoted Dr. Kirsh's notes that Plaintiff "states that despite her illness, she is able to perform activities of daily living and is able to work," and that she "is not frustrated, anxious or depressed about it." (*Id.* (citing *id.* at 656).) ALJ Loewy continued her analysis by discussing additional subsequent examination notes and results, none of which are addressed by Plaintiff. (*See id.* at 364-65.) Additionally, contrary to Plaintiff's assertion, ALJ Loewy did factor Plaintiff's complaints into the RFC even where the complaints (or extent of them) was not supported by the medical evidence. (*See, e.g., id.* at 367 ("To further account for her pain complaints, evidence of right carpal tunnel syndrome and her recent complaint of right shoulder pain, the [RFC] includes limitations for only occasional push and pull on the right side.").)

This pattern of Plaintiff cherry-picking an isolated test or statement (usually without citation to the Record) while ignoring subsequent or contradictory reports plays out with each of the impairments she argues should have been found to be severe. For some of the ailments, Plaintiff simply questions the ALJ's ruling without providing any basis for the challenge. (*See,*

*e.g.*, Pl.'s Br. at 20 (stating simply and sarcastically: "Plaintiff's lumbar disc and myelopathy is not severe.").)

A diagnosis alone does not support that an impairment is severe. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 (3d Cir. 2007) ("In addition to the diagnoses, Salles was required to present evidence that these limitations *significantly* limited her ability to do basic work activities or impaired her capacity to cope with the mental demands of working.") (emphasis in original) (citing 20 C.F.R. §§ 404.1520(c), 404.1521(a); *Ramirez v. Barnhart*, 372 F.3d 546, 551 (3d Cir. 2004)). Instead, "[u]nder the applicable regulations, an impairment is severe only if it significantly limits the claimant's physical or mental ability to do 'basic work activities.'" *Id.* at 144 (citing 20 C.F.R. § 404.1521). It is Plaintiff's burden to establish that an impairment is severe at step two. Plaintiff has not met this burden with respect to the impairments that ALJ Loewy found to be non-severe. ALJ Loewy's decision was based on a thorough review of the Record, after which she found many, but not all of Plaintiff's ailments to be severe.[5]

2. <u>RFC Finding</u>

Plaintiff attacks ALJ Loewy's RFC finding on essentially three grounds: that the RFC ignored certain severe impairments, that ALJ Loewy failed to adequately explain or justify how she arrived at the RFC determination (which Plaintiff argues is contradicted by the medical evidence), and that ALJ Loewy improperly discounted opinion evidence. (*See* Pl.'s Br. at 22-27, 33-35.)

---

[5] Even if ALJ Loewy erred with respect to one of the impairments that she found to be non-severe, such error would be harmless as she found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in her RFC finding. *See Salle*, 229 F. App'x at 145 n.2 ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.") (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)).

First, Plaintiff argues that "undoubtedly demonstrated and uncontradicted severe impairments were ignored at step two leading to an RFC which does not reflect all of plaintiff's demonstrated restrictions and doesn't explain the absence of demonstrated restrictions." (*Id.* at 33-34.) As discussed above, the ALJ did not ignore "uncontradicted" severe impairments. Additionally, even where she found impairments to be non-severe, she explained how the RFC finding accounted for any resulting limitations—if any such limitations even existed. (*See* R. at 356-67.) Thus, the Court finds this argument to be unsupported.

Second, Plaintiff argues that "there is no explanation afforded in justification of the RFC or how the ALJ arrived at it." (*Id.* at 34-35.) Plaintiff appears to be arguing that, because ALJ Loewy did not express her opinions by saying, for example, that Plaintiff "can only push and pull on the right side" and then provide immediately thereafter the ALJ's explanation for the limitation, the ALJ's decision is not adequately explained. The Court disagrees.[6] The Third Circuit has made clear that they "do not require an ALJ to adhere to any set format for explaining his analysis so long as there is 'sufficient development of the record and explanation of findings to permit meaningful judicial review.'" *Garrett v. Comm'r of Soc. Sec*, 274 F. App'x 159, 162-63 (3d Cir. 2008) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir.2004)). While ALJ Loewy did not present her RFC finding in the manner suggested by Plaintiff, she provided detailed findings and explanation related to Plaintiff's limitations both in the step two impairment analysis as well as in the RFC section. As the Court concluded in *Garrett*, ALJ Loewy's analysis "was more than

---

[6] To the extent that Plaintiff's arguments can be construed to be arguing that ALJ Loewy did not adequately compare Plaintiff's limitations to the listing (*see* Pl.'s br. at 17, 27), such a bare argument—without support or analysis—is not enough. *Milano v. Comm'r of Soc. Sec.*, 152 F. App'x 166, 169 (3d Cir. 2005) ("Milano has not attempted to show that her impairments meet or equal any specific Listing, and merely concludes that she has 'severe medical conditions' that 'might' do so. That is simply not enough.") (internal citation omitted).

sufficient to permit [the Court] to meaningfully review [the] decision." *Id.* at 162. The ALJ explained how the limitations assigned account for Plaintiff's various impairments and why she believes that her RFC finding is supported by the medical records as a whole. (*See* R. at 356-66.) To the extent Plaintiff cites to the Records at all or even simply references purported findings, she is cherry picking certain records without addressing or explaining contradictory evidence.

The third, and more substantive of Plaintiff's RFC challenges is the fact that ALJ Loewy rejected the opinion of Plaintiff's treating physicians as well as other consultants and evaluators. (*See* R. at 365-67.) ALJ Loewy did reject at least some portion of every opinion in the Record. (*See id.*) Her rejection of certain findings from the various opinions however was even-handed— she rejected certain aspects of opinions that were both in favor of and contrary to Plaintiff's positions. (*See id.*) For example, ALJ Loewy gave "minimal weight" to a 2013 opinion of an ophthalmologist who opined that Plaintiff "had no restrictions in the workplace" even though it was based on what ALJ Loewy described as a thorough exam and was consistent with activities reported by Plaintiff. (*See id.* at 365.) Instead, in order to account for a 2007 conflicting opinion finding vision limitations and "to account for the claimant's complaints of vision problems," ALJ Loewy added to the RFC "limitations to avoid hazards and unprotected heights." (*Id.*)

What the ALJ's opinion evidence analysis demonstrates is that in the lengthy medical history spanning six plus years, there exists contradictions, changed conditions, and in some instances, opinions without explanation or support in the medical records. Rather than simply adopt one opinion or another, for each opinion ALJ Loewy explained the weight she assigned to it, what she accepted or did not accept, and the basis for her decision. While Plaintiff calls the ALJ's approach "fantasy" as she did not follow a particular opinion or opinions in full and rejected some portion of all (or most) of them (*see* Pl.'s Br. at 26), the Court finds that ALJ Loewy's

approach was not only acceptable, but showed a thorough review of Plaintiff's medical history and an effort to weigh evidence that was not always consistent.

"The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). Thus, while an ALJ must consider the opinions offered, particularly those of treating physicians, "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity" where it is not well supported or there is contradictory evidence. *Id.* (alteration in original) (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)); 20 C.F.R. § 404.1527(c)(2); *see also Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."). Thus, the question is not whether the ALJ has pointed to a particular medical opinion for each of her facts, but whether substantial evidence exists in the medical record as a whole to support her findings. *See Chandler*, 667 F.3d at 361-62.

The Court has reviewed the record and ALJ Loewy's findings supporting her RFC assessment. Plaintiff's unsupported and conclusory attacks on the ALJ's findings are unpersuasive. The Court agrees with the ALJ that there exist many contradictory and unsupported positions in the Record. As a result, the ALJ focused on the actual medical tests and treatment records as compared to Plaintiff's self-reporting over the years (which included statements in 2012 and 2013 to treating physicians that she was able to work, *see* R. at 640, 656) as well as her testimony at the December 2013 hearing. The Court finds that substantial evidence exists for ALJ Loewy's RFC determination.

3. <u>Vocational Expert Testimony</u>

Plaintiff argues that ALJ Loewy's decision was inadequately supported at step five. (*See* Pl.'s Br. at 19, 27-38.) More specifically, Plaintiff asserts that she "was not allowed to call a scientific witness whose credentials were approved and certified by the Commissioner to rebut the very testimony utilized to deny plaintiff her benefits." (*Id.* at 19.) Plaintiff characterizes this denial of additional *testimony* as "Due process violation #2." (*Id.* (the first one being her original hearing without counsel, which was remedied by additional proceedings, *see id.* at 12).)

A "witness whose credentials were approved and certified by the Commissioner" did testify at the hearing. Ms. Distefano, who testified at the July 2014 hearing, is "an impartial vocational expert" who "has substantial experience in the field of vocational placement," and who "has been approved as a vocational expert under Social Security Administration regulations for over 20 years." (R. at 352-53.) Plaintiff's attorney did not object to Ms. Distefano "serving as vocational expert in this matter." (*Id.* at 381.) He also had ample opportunity to challenge her testimony by examination at the July 2014 hearing. (*See id.* at 408 (Plaintiff's attorney stating that he had no further questions for the VE).) At the end of the hearing, ALJ Loewy noted that the Record was closed. (*See id.*) Subsequent to the hearing, ALJ Loewy denied Plaintiff's request to submit addition *testimony* but reopened the Record for an additional fifteen days. (*See id.* at 376.) Despite this opportunity to supply additional written rebuttal materials or argument, Plaintiff did not submit additional evidence. (*See id.* at 353.) Instead, Plaintiff's counsel wrote a bombastic, non-substantive letter to ALJ Loewy. (*See id.* at 375 ("Aside from the unfortunate grammatical errors, confusion of tenses and intentional withholding of the legal basis for this arbitrary ruling, your correspondence bespeaks a disregard for basic evidentiary principles. . . . To make matters worse, Your Honor 'generously' offered to leave the record open for 15 day [sic]. Open for what?").) Plaintiff's counsel has not cited to a case supporting her position that Plaintiff has an

"absolute right to call a different vocational expert" for rebuttal *testimony*, particularly when Plaintiff was afforded an opportunity to submit written rebuttal materials, and chose not to do so.

When no additional evidence was received from Plaintiff, ALJ Loewy closed the record and rendered her decision. (*Id.* at 353.) ALJ Loewy found Ms. Distefano to be amply qualified and "to be a credible witness." (*Id.*) As a result, she relied on Ms. Distefano's opinion that ample jobs existed in the national economy for a person with Plaintiff's RFC and limitations.

Aside from Plaintiff's general procedural argument, she also argues that the VE's testimony was "incredible, unscientific conjecture which deviated from DOT standards as well as the Commissioner's own regulations, rulings and program operations," and thus, it was "bad vocational science" that cannot form an adequate basis to support the ALJ's decision. (*See id.* at 18-19, 21.) Plaintiff's specific challenges to the VE's testimony relate to hypotheticals on which the VE testified. The Third Circuit has previously noted:

> [O]bjections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself. That is, a claimant can frame a challenge to an ALJ's reliance on vocational expert testimony at step 5 in one of two ways: (1) that the testimony cannot be relied upon because the ALJ failed to convey limitations to the vocational expert that were properly identified in the RFC assessment, or (2) that the testimony cannot be relied upon because the ALJ failed to recognize credibly established limitations during the RFC assessment and so did not convey those limitations to the vocational expert.

*Rutherford*, 399 F.3d at 554 n.8. Plaintiff's arguments, however, take a different approach. Plaintiff challenges the VE's testimony related to limitations that *were* presented to the VE, but which did *not* form the basis of the ALJ decision. In other words, in this case unlike many where there are step five challenges, the ALJ posed hypotheticals to the VE based on *greater* limitations than she ultimately found to be supported by the Record. (*See* R. at 361 & n.1.) Plaintiff's challenges are to aspects of the hypotheticals relating to limitations which ALJ Loewy did not find to exist and on which she did not base her decision. For this reason, ALJ Loewy found Plaintiff's

VE complaints to be moot. (*See id.* at 353.) The ALJ also noted that, even if not moot, Plaintiff's arguments lacked merit as they misstated the applicable regulations and overlooked that the VE's testimony was based on her "significant professional experience and knowledge of how jobs are performed" in addition to other occupational sources. (*Id.*)

For example, Plaintiff argues that the "VE's testimony conflicted with both the DOT description and the Social Security Administration's understanding of the manipulative requirements of sedentary work." (Pl.s' Br. at 18.) In support of this argument, Plaintiff states:

> Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions. Any significant manipulative limitation of an individuals' ability to handle and work with small objects with both hands will result in the significant erosion of the unskilled sedentary occupational base.

*Id.* (quoting POMS DI 25015.020; SSR 96-9p; SSR 83-10; 20CFR 404 Subpart P App.2, R.201.00 (h)). Plaintiff then argues that, contrary to this guidance, "the VE testified that an individual limited to sedentary work *with only occasional fine and gross manipulation abilities in the dominant hand* would nevertheless be capable and *an inability to reach overhead* would nevertheless remain fully capable of sedentary work activity as an order filler, an information clerk and a telephone solicitor even if they had no computer skills and could not see ordinary computer font." (*Id.* (emphasis added).)

First, ALJ Loewy did not find Plaintiff's RFC to include a limitation of "only occasional fine and gross manipulation in the dominant hand" or "an inability to reach overhead." (R. at 361.) The ALJ instead found that Plaintiff was "limited to frequent right gross manipulation and frequent right fine manipulation," with no limitation for reaching overhead. (*See id.* at 361 & n.1.) The ALJ plainly noted:

> The undersigned posed a hypothetical including a limitation of occasional overhead reach, for which the vocational expert found jobs; however, the RFC found appropriate by the undersigned does not include this limitation.

> Further, the undersigned posed hypotheticals to the vocational expert, which included the limitations of occasional right gross manipulation, and occasional right fine manipulation, for which the vocational expert found jobs. The undersigned finds that the RFC includes the less severe limitations of frequent right gross manipulation and frequent right fine manipulation, which were not posed to the vocational expert. However, the undersigned finds that since these are less severe limitations than those posed to the vocational expert, [then] it would be appropriate for the jobs cited in Finding 5 in this decision.

(*Id.* at 361 n.1.)

Second, even had she found such limitations, the source cited by Plaintiff does not state that no sedentary jobs exist given such limitations. Instead, it states that there will be significant erosion of the occupational base. Here there was vocational expert testimony that found certain job to exist in sufficient numbers in the national economy given the limitations posed. Even had there been a conflict between DOT sources and the VE's testimony with respect to one identified job (which Plaintiff has not shown), such an isolated error does not automatically require reversal. *See Jones*, 364 F.3d at 506 n.6 ("[T]his Court has not adopt[ed] a general rule that an unexplained conflict between a VE's testimony and the DOT necessarily requires reversal.") (internal quotations omitted).

Third, Plaintiff has not demonstrated (or even argued) that the VE's testimony was erroneous based on the limitations actually found to be applicable by the ALJ and the jobs identified by the VE. In other words, Plaintiff makes arguments based on testimony related to the limitations not found to exist, but does not make an argument that the vocational expert's testimony, or the ALJ's step five decision was unsupported based on the actual RFC found to be applicable.

For the reasons stated above, the Court finds Plaintiff's step five arguments unpersuasive, and finds the ALJ's analysis at step-five to be sufficiently supported.

## V.   CONCLUSION

For the foregoing reasons, the Court affirms ALJ Loewy's decision.  An appropriate order follows this Opinion.

DATED:  February 17, 2016

                                                  _/s/ Jose L. Linares_____
                                                  JOSE L. LINARES
                                                  U.S. DISTRICT JUDGE